Good morning, your honors. In light of Judge Fragerson's remarks to open the day, I'm going to start with an extremely brief anecdote before getting to the substance of my argument. So I'll take 60 seconds of my own time to say that one of the very first arguments I ever made as a lawyer about 14 years ago was actually in this Ninth Circuit, and I was ready 14 years later after being handed my head in that appeal, doing a terrible job, being incredibly terrified of the three distinguished judges sitting before me who had all been practicing law longer than I had been alive. But this time I was going to come with the third. Scalia I remember Judge Goodwin and Judge Beezer. I don't remember the third. Ginsburg Are you saying that we look like we've been practicing law longer than we've been alive? Gillings Oh, no, no. Ginsburg You're being very careful with this. I just had a very sensitive subject. Gillings Oh, no, no. I've caught up to all three of you. I do have a case presently in front of Judge Fragerson's son. But I was already with the fire and brimstone that I was going to come here and do an amazing job this time and vindicate myself. Kennedy If you're on fire and you've got brimstone, we'll give you a glass of water. Gillings Exactly. But in the spirit of the remarks about a kinder, gentler approach, I'm going to make sure I dial down any of the fire and brimstone. I think the briefing lays out the general issues pretty thoroughly. So I don't want to spend your time rehashing those. And instead I'd like to talk a little bit about a few cases decided after all the briefing was in. To draw attention to a couple of issues that I think deserve some clarification from the Ninth Circuit to stop a problem of the misuse of Lindau, which seems to be propagating and becoming entrenched. And the first issue I'd like to point out is there needs to be a definitive statement that the de minimis exception has no application in the context of rounding. That was first noted in Eddings v. Health Net, Incorporated, 2012, Wesselaw 994617. That was from the Central District, March 23, 2012. Kagan Because the de minimis has to do with lack of records, essentially. And the other has to do with whether there are records. But there's just a decision to shave the hours being paid for. Correct. And in this case, there are actually two different components of timekeeping at issue. One is an off-the-clock time where there is no record of it. The other component is as to the actually captured time, digitally captured. Time is then being rounded. And we demonstrated without dispute in the record below that at least for three of the four plaintiffs, the rounding worked adverse to the employees. And one thing that wasn't clear to me from the case law, and maybe this is growing there next, was whether the standard on rounding, i.e., that it be neutral in both standard and effect, is applied on an individual basis or an aggregate basis. I mean, you're arguing for an aggregate basis with regard to the de minimis. With regard to the rounding, do we look at it individually or in the aggregate? Well, I'm actually saying that both were demonstrated in the court below. And is that what I'm asking you? Listen. I'm asking you whether the roundup, rounding off question is decided. I mean, well, let me give you the hypothetical. Suppose you could demonstrate that the rounding off over a one-year period over all employees favors neither the employees nor the employer. However, with respect to employees A, B, and C, they were getting docked all the time. I mean, always docked and never advantaged. Do they have a cause of action or don't they? I believe they do. I believe each individual You don't aggregate. Well, I believe that you do two things. First of all, an individual who has rounding work against them, I believe, has an individual wage claim. Okay. That person could bring an individual action. There is a separate issue that's not really part of this appeal, and that is the question of the class certification issue. Right. And your example is touching on the class certification question. Where you can have, if you're talking about, in this case, a couple thousand employees, and the sampling that we did extrapolated statistically across the class shows about $270,000 worth of rounding to their detriment. Some people, it worked out neutral. Those class members would be class members that have no damage, but it's been long settled that a class can have individuals in it who Hasn't been that well settled. It's not that well settled anymore, but we don't have that problem today. Sure, we don't have that problem now. But certainly, as far as aggregation goes, the issue on rounding could be looked at, is specifically calculated mathematically, and we demonstrated how that There's a separate issue of aggregation that I raise, which is the off-the-clock issue, and the fact that the case law says even very small amounts of time that are consistently occurring that can be aggregated to substantial amounts should be a factor in deciding whether to apply the de minimis rule. The de minimis rule would only have application here, if at all, on the off-the-clock time, not the rounded time. Several courts have now recognized, which is where I was going, Southern District of Ohio, July 11, 2013, in Lacey v. Ready Electric, 2013, Westlaw 3580309, also agreed with the Eddings Court that there is no nowhere for the proposition that you can apply the de minimis rule to rounded time. It simply makes no sense to say you've captured the exact clock in and clock out time for people with certainty, and then you arbitrarily round it in a way that allows the employer to pay less. There's no take-back rule where an employer gets to shave a little bit of time from an employee after establishing that they started at a time and ended at a time. Kagan. I don't know if that's entirely logical. I mean, suppose you could demonstrate that just keying into the computer for payroll purposes, you know, a minute at a time will cost more than the minute. Why wouldn't the de minimis rule? I mean, the de minimis rule, after all, isn't in the statute anyway. So if you're going to make it up, why couldn't you make it up in this context as well? Well, but here we have a situation where the people have had their time digitally captured. It's already in the system. And then Time Warner. But it hasn't been translated into a payroll. Well, but in the record, it was also demonstrated that Time Warner was using the Kronos timekeeping system, which is probably the preeminent timekeeping system used in industry in the United States. All of its numbers pour into automated payroll systems. The entire process from beginning to end is being done by computers. There is no additional human cost time. Let's remember for a minute where this de minimis idea came in in the first place. Before there were computers, when you had a payroll clerk sitting down with a time card that was handwritten by people or punched on a time clock, it's much easier to add up 8 hours, 7.75 hours, 8.25 hours, 8 hours, 8 hours, and say it's 40 than it is to have that clerk trying to figure out how to calculate for pay purposes what 3 minutes before and 6 minutes after the hour meant manually with no computers, no calculators. This is where this concept came from. The cases talk about the industrial realities. The industrial reality in this case is that we had a call center filled with cubicles of individuals. They used a magnetic swipe badge to swipe into the secure room where they all sit at cubicles working at computers. The Kronos timekeeping system that Time Warner was using is advertised as being capable of capturing time from time swipe key cards like they used, from RFID chips where you wave a card past a scan pad. There would be effectively no cost besides perhaps one piece of equipment in a call center with hundreds of people to have a system where the person walks by with a card, waves it across the panel, and they are then clocked in and sit down at their workstation and turn on their computer. Counsel, that's what your briefs represent. Opposing counsel doesn't agree with you. Do you want to respond to his argument? Well, first of all, this was a summary judgment motion. That was the testimony of the plaintiffs. It was undisputed. Your position is that it's a disputed issue of fact? Absolutely, it's a disputed issue of fact. If they're denying, I mean, their PMK for the 30B-6, excuse me, witness for Time Warner testified, and it was in the record, that they used the Kronos timekeeping system. The Kronos timekeeping system has publicly available features and capabilities that the company advertises. I understand what you're saying in terms of capturing the time. I'm not sure I'm fully persuaded with regard to the application of the de minimis rule to the rounding off, because, again, there's a translation factor at that point of time to money. And, you know, lawyers keep time in quarter hours, just because it's really much more complicated to start multiplying, even on a computer, to start multiplying out individually each, you know, 51 minutes rather than 45 minutes and half hours. Why isn't that a good enough reason for at least a little bit of shaking of movement? Well, if there was evidence in the record on a motion procedure. We're not there, though, anyway, are we, on the rounding off thing in this case? I mean, in other words, we're not really to the point of seeing whether there are very, very small amounts of rounded off time, because the amounts of rounded off time aren't very, very small. Well, that's correct here. That's what I'm saying. Right. We're not at the few-second sort of issue where there's an unreasonable burden. But this brings me to a point I want to emphasize from the briefing and bring it up in the context of... That's because all the data that we needed to determine the exact time when the employee gets to work and is ready to go is this new system is easily recorded. I think in this instance it is. And here's the thing that I think requires clarification. Courts cite Lindau, the 1984 decision from the Ninth Circuit, for this three-part test that it articulated. But I believe that's a slight misunderstanding of how the test applies. Lindau talks about the practical administrative difficulty of recording time, the aggregate amount of compensable time, and the regularity of the additional work. When you look through cases that litigate this issue, Rudy v. Lojack from this court, district court cases, typically they're only talking about the second and third elements. I believe what requires clarification is the practical administrative difficulty is effectively a condition precedent to getting to the balancing test. If you have no practical administrative difficulty in recording the actual time, there's no legitimate basis for claiming you don't have to pay for all the time. Does the need to change your system constitute a practical administrative difficulty? In other words, I gather, would you be saying, well, they should just use what they already got, the clock and time, or would they need to change something at that point? I'm saying in this particular case on these facts, they had the option with the Kronos system they implemented to use one of two ways of capturing time. One was using those magnetic cards when people come in the building. That's what I'm asking you here. So you're not saying they'd have to change anything. They should just use the magnetic cards they already got. They would have to put a new system in at the front end. Either what they already have, or because they chose to use computer capture, where people have to start up a computer and start certain programs before their first clock and event can occur, that because the employer was the one that made the choice to create a circumstance where people are doing some work before they can clock in, and it had the ability to choose another way, which was capturing time at the door or with a Kronos connected kiosk.  That's what I'm trying to understand. The way they have it set up now, where they do have people swiping in at the door, do they have to do anything other than is there something they would have to do to capture that time? Well, I think that Kronos says it can interface with magnetic key card systems, so there may be... They have to modify their system, counsel, wouldn't they? That's what I'm trying to find out. It's a possibility. They have to modify the system or not. It's a small modification. You're really not answering the question. And this is an important question. She's asking whether they would have to do anything. And it sounds like there would have to be a modification, and I'm not trying to be... Well, I am trying to get an answer to this. Please. There might be. That was never established in the record. Okay. But your point on this clarification of the case law is that we don't get to the balancing test if there's really no burden. And so would you speak to that, please? Because it sounds like the best you can say is there might not be a burden. Opposing counsel thinks there is. You read his brief, of course. Sure. Could you speak to that? Right. Well, I mean, what I'm saying is that the first obligation is to establish that there is a practical administrative difficulty to capturing all the time. Now, when you're talking about field workers like the LOJAC installers in Ruddy versus LOJAC, there is a difficulty of the employer figuring out how long a person sitting in their home took to plot out a map for the route for the day of their field installations. That does create a difficulty. Why don't you just tell us what could be going on here? Well, what? You mean what could happen here? Just stick to this system. Sure. This system, either the ---- Tell us why it's no additional expense to the employer. And you understand what I'm saying? Right. I understand. I think in this instance ---- What you're saying is you essentially are saying it doesn't matter if there's an additional expense because they're the ones who set it up this way. Right. And they could have set it up the other way. So the fact that there will be a change, which may cost them something, is because they didn't do it right the first time. That's basically what you're saying. Certainly, that's part of what I'm saying. And we've ---- What if the way they would have to do it would even ab initio would have been a lot more complicated and expensive? Your supposition is that isn't true here. But suppose it were. Suppose it would be. That, I think, is what the first Lindau claim is going to, right? Right. And so in that instance ---- So if it would be much more complicated, even had it been done ab initio, that would be a consideration. That would be a consideration. If they demonstrated it would be significantly more expensive. And they have profited from the system they've installed in an amount very close to $2 million over the four-year statutory period that we can look at, claim-wise. So if they established ---- They're not entitled to rely on the difficulty of changing it, but they're entitled to rely upon the difficulty of doing it the other way, just by itself, if there is any. I think that that would be a factor that they could show to entitle them to move on to the second step, which would be looking at the aggregate amount and the regularity. And we know in this case the regularity was a daily basis event because every person every day clocked in. That's established in the record. So then the only element that remains that could be in dispute is the aggregate amount of time. And the last item that I think needs to be clarified as to how Lindau applies is, Lindau said very clearly, we aren't setting a 10-minute rule, and yet somehow district courts are hearing there's a 10-minute cutoff. And if something is ---- takes nine minutes, it doesn't matter if it happens every day. Don't we have ---- already have case law in the Ninth that says that? It seems to ---- Do we have a bright line 10-minute rule or 15-minute rule? Well, the Ninth Circuit has said it, and the district courts don't seem to be hearing that. But you want us to clarify? My impression is it's something that deserves reinforcement. If it's an issue that continues to be missed, then apparently it's an issue that deserves reaffirmation. We don't have a 10-minute right-line rule. So you want reaffirmation as opposed to clarification? Capital letters. Well, with strong underlining and boldface and italic font. Got it. Thank you. Okay. I wasn't trying to be glib. We do have case law that says that, don't we? You do have case law that says it, and I continue to notice district courts that seem to be, some of them missing that point. Others seem to pick up on that distinction, but it's not uniform. Finally, I'd like to point out that the counsel for Time Warner knows that they have to establish, in the case of rounding, that it's both facially neutral and works to the, that it's neutral as applied. They're aware of that. The record in this case, supplied by the plaintiff, demonstrates that at least for three, it worked to the disadvantage of the plaintiffs. One, substantially. Counsel, you keep saying that, but my notes show that Walters and Hayes, that you're, oh no, wait a minute. It was neutral as to Gillings and Bond. Gillings had about 50 plus hours to the detriment. But weren't Walters and Hayes actually overcompensated by the rounding? Wasn't that what your evidence showed? Do I have that wrong? ER 1063 and ER 1088. Gillings, Bond, and Walters were underpaid. Walters' underpayment was small compared to Bond's, who was close to 23 hours, I believe. And Gillings was over 50 hours of underpayment. So when you say one, you think it was just Hayes? I believe it was just Hayes. Okay. I'll check my notes. I'll double check my notes. Thank you. One last question. What did the district court say about the rounding issue? Well, with respect to rounding, what was unclear to me from the order was whether the court was rolling in its discussion of the de minimis doctrine into rounding. Okay. That seemed to be not clear. That issue was effectively raised between the opposition and the reply briefs as to what the issues actually were on appeal. And part of that, I think, stems from the fact that there was a lack of clarity The court's position is at least clearer when it comes to its de minimis discussion for off-the-clock work. I believe that it was legally incorrect, but it was clearer. What's unclear is what its position was on rounding. And I am still not clear why the court missed a plaintiff who had more than 50 hours of rounding against her, which would have been pay in the neighborhood of $750, and didn't acknowledge that that was at least worthy of being presented to a jury for a determination of whether it was worthy of compensation or not. But in any case, to run down the appellant to requesting reversal of the trial court's order granting summary judgment, we like the reaffirmation of the Lindau test to make it clear that if there's no significant administrative difficulty shown, that you don't move to the second and third elements of the Lindau test. That if an employer is the one that creates a circumstance where it's harder to capture all the time, and they could have just as readily imposed a system that did capture all time, they shouldn't be allowed to assert the de minimis defense. It's effectively, equitably unjust to let them do that. Confirm the adding versus health net decision that there is no de minimis exception for rounding. The employer has the equipment necessary to accurately clock in the time when the employee starts to work. Right, but there should be a minimum burden put on employers to do that. I don't think we should be setting a policy that allows an employer to say, I'm just not going to have a time clock in my business, and then because of that, I'm just going to estimate when everyone started work, and it would be very difficult to get an exact time, so we're going to estimate and round. But now they can get the exact time. Now they can get the exact time. Okay, that's fine. Alright. You're way over your time. Thank you. I don't know what we're going to do with that. Nine minutes is your overtime. Clock it. We know how much. We'll round it off. Thank you. Thank you, Your Honors. Joseph Osmer for the Time Warner Cable defendants. I'd like to start with a couple of the things that plaintiff's counsel started with that he was asking the court for and point out that in most respects, Judge Guilford's order went through all of the analysis that he's asking this court to clarify. What they've done for their appeal is mischaracterize Judge Guilford's order and then attack that straw man. Specifically with the issue that they... Yes, Your Honor. Is he correct? Is your opponent correct when he asserts that Time Warner has the equipment to accurately determine the time the employee starts to work? No, Your Honor. That's not correct. And here's why it's not correct. He talked about how for security purposes there's magnetic card swipes to get in the building. Those are not connected to the Cronos system and I'm not aware of any method where those connect to the Cronos system. Cronos does have separate systems where you go back to the wall clock days. It's very common for people to clock in on their desks with their computers now. I would assume the court knows that, but before that wall clocks were very common and Cronos does have those. We don't dispute that those could be purchased and installed and that we could capture time that way. We do dispute that that would be a better way to capture time because it wouldn't capture all the time that they would claim would be compensable. For instance, people would be trading the two or three minutes that they now have to conveniently clock in at their desk on their own computer. They'd be trading that for two or three minutes or more of standing in line queued up at a wall clock. Well, I say there were no lines. I mean, you can deal with that on a summary judgment or trial, on a trial. They claim there are no lines now. Why would there be lines then? Well, Your Honor, there would always be lines. You have people starting the shift at the same time. There are going to be people queued up to clock in unless we're going to be required to install 25 or 50 wall clocks to address that. Counsel, cut it back. I'm at the risk of making myself sound like a dinosaur. You said people routinely clock in at their computers and you assume we know that. We never clock out. Pretty much we're clocked in. Of course, Your Honor. And I'm not trying to give you a hard time, but why is it different? I don't know that. I don't know that people generally clock in on their computers. Yes, ma'am. So is that in the record? And here's what I'm trying to get at. Why would it be harder if you could or why would there be a longer line if you have to swipe to get in for security reasons, which we are familiar with, than swiping to have that record that I'm, you know, the time? That's an excellent question, Your Honor. And what happens, that's another problem with the idea that the security swipes could capture time. Because not everybody security swipes. In the morning at the start of shifts, what happens is there's a train load of people coming through the door and somebody swipes in and then some nice gentleman or lady is holding the door and people are filing in without swiping. That's the routine. Okay. So whether they do the swiping or not. So does the district court here find that there was no material issue of fact with regard to the set of practical questions? I'm sorry, Your Honor? Did the district court here determine that there was no, or could we determine that the record establishes with no possible conflict in material fact that your version of the difficulties here is correct? No, Your Honor. That was not, there was no evidence in the record either way, because this was the this was primarily raised at their oral argument. The issue that we have to install wall clocks to capture this. But wait a minute. Forgive me. But your position was that this would be burdensome. You'd need to have an interface or you'd need to change something. Well, Your Honor, our position was that you look at the existing, the clock in system we have, and you evaluate that. If you look at Lindau, Lindau certainly stands for that proposition. Lindau, one of the issues in Lindau was that the Corps of Engineers only recorded time in 15-minute increments. That was part of why the Court found it would be administratively difficult to capture the 7- to 8-minute increments, the daily increments at issue there. The Court, this Court could have easily said you need to change that timekeeping system. Let's start keeping track of time and to the minute or 10-minute systems. That would probably have been easier and less burdensome than requiring a company to go back to the days of wall clocks and install wall clocks. But there's no case that says that you, that the analysis is to throw out the existing timekeeping system and see if there's a more perfect system. You can poke holes in any timekeeping system. For instance, the wall clocks, they do create lines. People do stand in lines. And employees complain about that. They don't, they don't, there's no evidence in the record of this, but they would prefer to clock in at their desks. But let me back up. So is the answer to the question about why this isn't a material issue of fact, this question of whether it would be technologically burdensome, is the answer to the question about why there's not an issue of fact about that, that your opposing opponents didn't raise it in the pleadings, I mean, in their filings and didn't raise it until argument? No, Your Honor. The problem with that argument that they're making is it has it backwards. It's starting from the wrong point. The district court followed the analysis that this Court followed in Lindau. It followed the analysis that was more recently followed in Rudy. And it looked at what the plaintiff's allegations were about the off-the-clock work at issue. It looked at the method for clocking in. And the Court properly determined that you're talking here about a few minutes of time to just either. But it can't be true that if the, just in the larger picture, that if an employer uses a system that loses time, when they can use a system that doesn't lose time, let's not talk about the details, that that's a defense right there, right? I mean, there has to be some way to say, look, there were choices made here, and the choice was to use a less efficient system than you could have used a more efficient system. No, Your Honor. That is, when we're talking here about a few minutes involved, and the test, it wasn't disputed that if they simply locked their computers, which they're entitled to do, it was Control-Alt-Delete, you're on your computer, that was less than a minute, and then you're into Avaya, and that automatically clocks you in like that. The Court was entitled to, and properly, in accordance with the case law from this Court, looked at that system, determined that with any timekeeping system, there's going to be some time spent to get on the clock, including standing in line for a wall clock, and he looked at the time at issue here and determined properly that it was de minimis, not just because of the time. They talk about, you know, you need to clarify there's no 10-minute rule. That's, Judge Guilford certainly understands that. His order went through all of the de minimis factors, and he discusses the practical administrative difficulty of capturing those moments of time where that employee is sitting down, unlocking their computer, and going to the system in order to clock in. It takes employees a different amount of time to do it, depending on whether they simply lock their computers or whether they choose to log off. It takes employees differing amounts of time to do it, depending on just how dexterous they are with computers. But that was the proper analysis. He analogized, his analysis was right down the line with what this Court has done in both Rudy and Lindau, and it was entirely correct. There's no – we're not aware of any case law that follows the analysis that the plaintiffs are here suggesting to this Court, which is that you look and see if there is something that was a more perfect time system if the employer was supposed to install the plaintiff's preferred system. That would require the employer to go out and prove a bunch of negatives about why this – why any system that could be thought of was not necessarily better than the system the employer chose. And that's simply not – you can't draw that from Lindau, because Lindau easily could have told the employer, stop measuring time in 15-minute increments and you can record this time. One of the things I did want to point out, though, he started by talking about how the district court applied the de minimis doctrine to the rounding claim, and that he wanted this Court to make a definitive ruling about that. There's no need for this Court to do that, because the district court did not apply the de minimis ruling to the rounding claim. Sotomayor, having looked back at it, what the district court said about the rounding claim, as I understand it, is that it's neutral in – it has to be neutral in concept, which it is. It has to be neutral. It's neutral in effect if it benefits some people and is detrimental to others. So he was not looking at it on an individual basis. Does he have to look at it on an individual basis? No, Your Honor. That's the key legal issue, right? It – I'm not sure what you mean by that. Well, let me explain what I – Because that's the difference between you, as I understand it. The district court said, well, the fact that, you know, A employee was benefited and B employee was harmed means that it's neutral in effect. And the plaintiff's position, as I understand it, is no. If plaintiff – if B was harmed continually by the rounding-off system, then it's not neutral as to him, and therefore he can recover. Your Honor, the – let me start with my conclusion and then I'll explain it to you. The issue, the legal issue, is whether the policy itself was neutral, both facially and as applied. In their briefs, they don't attack the Court's analysis on that at all. As you know, in the opening brief, they said the Court applied the de minimis analysis to rounding, which it didn't. Then when we pointed that out in our answering brief and reply, they said that the neutral as applied analysis. And that's what I'm trying to find out. If you – you say – you seem to be denying that there is a key legal difference between the argument, at least the way they're making it now and what the district court did, and I'm trying to find out, A, is that true, and, B, who's right? Yes, Your Honor. And what I'm trying to say is the Court did look at neutral as applied, and I'm going to explain how he did that. I know how he did it. I just told you how he did it. I want to know why – whether how he did it is the right way, i.e., in the aggregate as I understand it. It is. Well, he's – I don't like the word in the aggregate. What he's doing is he's examining the policy itself. And does the policy – is it neutral as applied? Does it give employees the opportunity to gain time and lose time? Well, that's just the same as neutral in design. So he couldn't be saying that. There's a second step. Your Honor, it's – And the second step, as I understand it, was to look at how it actually impacted the plaintiffs. Correct, Your Honor. And that's what I'm trying to get to. There were two plaintiffs, and you were correct on that, Your Honor, and I'll give you the record sites in a moment. Two of the plaintiffs, half of the plaintiffs here gained time based on this rounding policy. The fact that the other – that two other plaintiffs lost time – But that's peculiar. Suppose only one plaintiff had filed the lawsuit. Suppose there weren't four plaintiffs in the lawsuit. There was one. And this plaintiff comes in and says, look, every day I'm losing 10 minutes. And that's – and that's borne out. But, Your Honor, under a neutral – under a neutral rounding policy, and we're talking about a lawful neutral on its face and neutral as applied, the type of rounding policy that both the DOL and the DLSC approve of, the type of rounding policy that is exactly what the Time Warner Cable entity set up in this case. An employee can gain time, like Walters and Hayes did, or they can lose time. Just because an employee, because – and the primary thing that's going to determine whether you gain or lose are your own particular routines with respect to clocking in in the morning, clocking in and out for lunch, and clocking out at the end of the day. And if there is a legal neutral rounding policy, the policy is applied fairly, and it's neutral on its face, and an employee happens to lose time because of their own routine, that doesn't make rounding unlawful. I mean, the two prongs to the standard, i.e., the neutral in design and the neutral in effect. That's a fair question, Your Honor. The reason there are two prongs to the standard is because if you read the case law, including the cases they cite in their brief for the – for, you know, places where rounding was found to be either illegal or a question of fact about it, you can say we are going to – you can draw up a policy that says we're going to round to the contrary. So the fact that there is a rounding policy on its face is what the DOL says you can do. But then there are cases out there, and these are the cases they cite, where that's not what the employer actually does. For instance, the most recent case on it is the Eddings case, which they cite. That's a very good case to discuss because there were two rounding policies there, and the court divided its summary judgment order into those two rounding policies. The first rounding policy, the company had a facially neutral policy. They said this is the way you're supposed to round. But there was evidence. And in that case, under that rounding policy, the plaintiffs entered their own time. The plaintiffs were told – they put in evidence that several of the class members were told only round down. That's not neutral. Regardless of what the policy says, if you tell someone only round down, and there was other cases that they cited where the employer was only – But that's just cheating. I mean, that's not a neutral effect. That's not applying the policy. That's why it's not neutral as applied. And that's what – that's exactly what Eddings said. Now, if you look at the second part of Eddings where they took it away from the employees and said you're no longer entering your own time, so there was no ability to tell anybody only round down, she granted summary judgment on that because that policy – there was no evidence that that policy wasn't neutral. It was – it was the – it was just as Time Warner's policy is here, Time Warner Cable's policy. It was set up exactly as the DOL and DLSE envision, and it was done by the computer automatically. And that summary judgment was appropriate on because that was neutral on its face on the plot. The position is that the neutral in effect standard has nothing to do with how the – a fair, neutrally applied system works out in practice. That's not what it's about. No, Your Honor. That's not what I'm saying. It does have to do with how it works out in practice. But simply because one or some plaintiffs lose time does not make the policy itself unlawful. Everybody loses time. But in fact, it's perfectly fair. It's all done by computer. It's just they all happen to come in on the low end of the 15 minutes. Those aren't the facts before the Court, and I don't – I'm not sure that – how that could happen if the policy was being applied neutrally. But the point, and I think it's a very important takeaway from this, is that if the policy itself is neutral, that doesn't guarantee somebody's going to gain time. It doesn't guarantee somebody's going to lose time. It is a fair rounding system. An employee can gain time or an employee can lose time. But if someone was going to have a claim simply because they lost time under a fair and neutral policy, then you are writing out of the law rounding. It would be – you would make it – it would be a practical impossibility for employers to round at all, because there would always be some employees who, because of their own particular clock-in or clock-out routines, lost time. Those people would always have a claim, and in the case of a company of any size, it would always be a class action. So if you're going to construe the rounding regulations that way, then you would be saying the very regulations that bless rounding on the one hand and say employers can do it are then interpreted in a manner that makes it impossible for employers to in fact round. We don't believe that the law should be interpreted that way or should be construed that way. Your Honor, to one point of clarification, you had – they had admitted that Hayes had gained time, and they were saying Walters didn't, and we noticed that in their briefs, but if you look at – But in your theory, this doesn't matter at all. I'm sorry, Your Honor? Your theory, these facts do not matter at all. They do matter, because the fact Judge Guilford found here that it shows neutrality is applied because it's allowing employees to gain time. The employer is not just not – I mean, it has to be true in your theory that even if everybody lost time, as long as it was not due to the system, then it's okay. Your Honor, I don't know how that could happen, but if you could prove – I'm not making a statement. Well, it could happen if everybody tends to come in at the – at the bottom and instead of the top end of the rounding-off system. Well, and then they don't gain time back at lunch and they don't gain time back – I mean, those just aren't the facts here. It's the question of habits, what people's habits are. Right. And it's half of the plaintiff's gain here, and that's what Judge Guilford saw. He saw a policy that allowed people to both gain or lose the plaintiff's gain. But I just think you're being very inconsistent about whether the facts – the application matters or doesn't matter, and it would be helpful to me if you would just take a position and explain to me which one it is. Your Honor, I am taking a position. The – as applied is how – what that refers to is how are you actually applying this rounding policy. As I mentioned in the – in the editing – On how it's coming out. Right. Not just – not just – But therefore, these facts that you're – were just clarifying do not matter at all. They – they matter because here you had half of the plaintiff's gain, and that showed Judge Guilford that – that we – we put in evidence that it was neutral as applied, and they had no evidence that it was not neutral as applied. Just because someone loses time does not mean it's not neutral as applied. Rounding doesn't – you know, as the – as the Court stated in the East v. Bullock's case, rounding time – rounded time does not have to equal unrounded time. That's not the law. There are rounding – yes, it's – Could you say that again? Rounding time doesn't have to equal – I'm sorry, Your Honor. Rounded time – there's no requirement under rounding that rounded time must equal unrounded time. Thank you. Yes, Your Honor. That's because, as the Bullock's court stated, while rounding doesn't pay for time worked at some times, at other times it pays you for time you didn't actually work, which is – was the case for – for Walters and – and Hayes. And, Your Honor, to the extent that you were interested in – in Hayes, on 1233 is – and in the record at 1233, if you look at paragraph 36 there of the Statement of Undisputed Material Facts, the statement – the fact is, defendant's rounding practice resulted in Plaintiff Walters being paid for more time than she would have been paid based on her actual clock-out times. And plaintiff's response to that was undisputed. So it was two of the four plaintiffs. And I just wanted to clear that up. Michael, the law clerk appreciates that. The – so with respect to the two plaintiffs who lost here, Judge Guilford correctly concluded that that loss, the plaintiffs had not shown that that was due. It was due to a non-neutral rounding policy. And the argument that Judge Guilford did not examine the issue of neutrality as applied is just – is belied by the order where the Court said, but the Court cannot conclude its analysis there. It must also consider whether defendant's rounding policy was neutral in practice. Two other points I'd like to make on that. And, of course, the – Who developed the policy? Who developed the rounding policy? Well, the – the rounding policy that we apply is a textbook example of what is in the Code of Federal Regulations that allows you to round to the nearest 15 minutes. Is that a – I'm not sure of the judge's question. I mean, the employer is obviously the one that chooses to use a rounding policy for the convenience of recording time in 15-minute increments, just as was done in Lindau, Your Honor. Well, you know, I had a case earlier this year involved – involved a rounding policy. The Lava case. Yes, Your Honor. Yeah. What did you think of that one? Well, Your Honor, that's – that was a – that was a class certification case, and I believe in that one, Judge Klausner had found that common issues did not predominate, but he was looking at the damages issue, and the Court correctly found that – that when – if the only non-common issue is damages, the precedents of this Court don't prevent class certification under that – under that scenario. So I think that case was correctly decided, but it didn't involve any of the issues before us today, Your Honor. Counsel, in terms of the practical application, because I know we're over time and other folks are waiting, but I want you to correct me if I've got some of this wrong. My understanding is that the defendants rounded to the nearest quarter hour. Yes, Your Honor. And that the defendant had an attendance policy with no grace period. People had to be – were tardy if they were one minute late. No. There was no evidence that – that anyone was written up for one minute late. I'd like to – Well, isn't the policy you need to be there on time? Yes. The policy is that you need to be there on time. Yes, Your Honor. Okay. And they're supposed to be ready to receive calls at the start of their shifts to actually help people respond to calls at the start of their shifts. What they were required to do, let me – and I can – and I can read depo testimony if Your Honor would like. They were required to be at their desk at the start of their shift. That's different. They're not required to actually be able to respond to calls? According to all four plaintiffs, they're not aware of anyone who was ever written up unless they weren't at their desk at the start of their shift. Okay. So being written up is different. Yes, Your Honor. And we're getting to the place where it seems to me that I need a little help. It sounds like there's a difference between clocking in, and then the deposition testimony says that it took between three to six more minutes, that's their allegation, opposing counsel's allegation, to boot up these other programs. And you've got to have the other programs booted up before you can really feel the phone call and respond to the question. No, Your Honor. The plaintiffs – all four of the plaintiffs testified that you can take phone – you can clock in, and that clocking in – you clock in by logging into the Avaya phone system, as I think Your Honor understands. Right. You can't take calls then because you're in what's called an auxiliary mode. Right. When you're ready to take calls, you hit – you do what's called auto-in. Those are two separate processes, and I want to make that clear because they conflate them in their briefs. But the plaintiffs testified – Okay. And at that point, then I could answer the phone, but I understand the deposition to say – testimony to say that until the other computer programs were booted up, the employee wouldn't be in a position to be able to, you know, pull up the customer's account and respond to a customer inquiry. Your Honor, that is not what the testimony was. They testified that they – all four of them testified that they – you could take phone calls before you loaded up these other programs, that you could talk to the customer, find out what they were looking for as you loaded up these programs, because we're talking about a couple of minutes here. And they testified that they had also done that. But until the programs were loaded, they weren't going to be able to pull up the phone and get into any detail. Is that right? With the customer – the one program I believe was ACSR, which is the customer database, that is the one program that you're correct, Your Honor, with respect to that one program and that program only, you couldn't see details about the customer until you got that program up. But they all testified that they had taken calls without having that up while, you know, they get the first person on the phone. And again, this is assuming there's a call waiting for you at the very start of your shift. Right. And it also assumes, I guess, the sort of difficulty of the question. That's because this runs 24 hours a day. I don't – Your Honor, I don't know that any of these call centers were running 24 hours, any of the ones at issue here. I know in the past there had been call centers that were run 24 hours, but that's been several years since that's been the case. I'm not – I don't believe any of the ones at issue here were 24-hour call centers. They're up at 2, 3 in the morning. And call in for service? I don't know what happens with those people, whether they get a recorded message call back during regular hours or whether they're channeled off to another call center in another part of the country or another part of the world. I don't know the answer to that question, Your Honor. It goes to India, huh? I'm sorry, Your Honor? It goes to India or something? I'm speculating, but it could. But, you know, to get to talk to someone, there's a voice that tells you what you need to do and tells you the numbers to push, right? Yes, Your Honor. Then another voice asks you questions. Yes, Your Honor. I think the way it would work is you would call in and it would ask you to push numbers for what you needed. How long do you get to talk to a live person? Maybe 5, 10 minutes goes by. It would depend on, you know, what time of day you called and call traffic. And, frankly, probably what number, you know, which queue you went in, what you pushed for. Am I calling for sales or am I calling for service? Am I calling about billing? Probably all those would be factors into how long you would wait. One point I wanted to make, Your Honor. Regardless of everything they say. I think he's just finishing up the answer to my question. Yes, Your Honor. With regard to the things that they say about, you know, having to be early and those issues, Judge Guilford did address that as well. If you come in 8 minutes early, rounding goes back and helps you there. In addition, the proof's in the pudding here. Half of the plaintiffs, regardless of whatever they want to say, half of the plaintiffs gain time. So these aren't having the effect. I mean, this is a very small sample. I don't know exactly how you do this. The California case law seems clearly to say that it's neutral in the aggregate over time, which is not what you were saying. So if that's the standard, how do you do that? I mean, here you have four plaintiffs. If we just looked at the numbers we have, in the aggregate over time, was it neutral or not? Well, Your Honor, yes. It is – I'm not sure what Your Honor means by the word aggregate. And the reason I resist the word is because aggregation is part of the – Well, the ground is aggregate, but individually. Those are the two options. Aggregation is part of the de minimis analysis. It's a term of our – and I don't – and we're talking about the rounding. You have four plaintiffs. Are we going to look at each of them and decide whether it was neutral over time with regard to them? No. Then as to two of them, it was not. Or are we going to look at all of them together? I would call that aggregate, but if you want to call it en masse or something, go ahead. Yes, Your Honor. And if you do that, does it come out neutrally over time or not? Your Honor, what you look at is the – On average. What you look at is the policy itself on its face. That's not what the California case law says. But it does, Your Honor. In looking at it as applied, you – That it doesn't. I would look and see whether the policy is – is the policy one that's going to consistently favor the employers. And the evidence before the Court here was he had four plaintiffs before him. Two of them gained and two of them didn't gain. So the evidence showed that it didn't consistently – Gained more than the ones who lost, lost, or vice versa? I'm sorry, Your Honor? The ones who gained, gained more than the ones who lost, lost? I don't – I don't know the answer to that, Your Honor. That's what I'm trying to find out. With respect to – I would say they claim Gillings lost quite a bit, so she may have overbalanced the other two who gained. But we don't believe that that's the issue. But have any studies been done – say you need to clock in at 8 o'clock, huh? And if you clock in eight minutes before, you get a benefit, right? Yes, Your Honor. And if you clock in seven minutes before, then what happens? If you clock in seven minutes before, that time would be rounded to the start of the shift and you would lose those seven. It's a record which says the common-sense thing, which is that people – So you'd lose seven minutes. Yes, Your Honor. And if you clocked in at 8, you would gain seven because it would round you back to 15 minutes before. And since it's somewhat common sense that people are likely to come in closer to their time, their shift begins then further, if it turned out that it was much more likely that they were going to be rounded down than rounded up, what would that demonstrate? Your Honor, absent a requirement that they do that, that doesn't affect the neutrality of the rounding policy. I don't mean the California case. No, but I'm talking about the way human beings behave. Are there more people that clock in before the seven minutes happen? Or are there more people that clock in from seven beyond? I don't know the answer to that, Your Honor. There was no evidence of that in the record. There are probably more people that clock in seven beyond because considering LA and the traffic and all the rest of it, it's almost impossible to get any place on time unless you leave very, very early. Yes, Your Honor. The odds are that more people are going to clock in at seven or beyond than would clock in at eight. Well, I think, Your Honor, let me put this in terms of actual time. If someone's start time is at eight o'clock. If I were working there, I'd probably clock in one minute before. And that minute would be rounded away. But if you were a minute after, you'd get that time back. Or if your lunch was, if you took a 55-minute lunch, you'd be paid as, or excuse me, if you took a 65-minute lunch, you'd be paid as if you only took a 60-minute lunch. And at the end of the day, if you left a minute early, you'd be paid as if you hadn't. But the, you know, as Judge Guilford found, if someone, because of the traffic reasons that Your Honor is talking about, gets here early and they elect to clock in at 752, they're going to be paid as if they clocked in at 745. Your Honor is correct. If they clock in at 753, they'll be paid as if they clocked in at eight o'clock. But we don't believe that that makes the rounding policy not neutral. And again, it didn't have that effect on half of the plaintiffs here. Well, then, in the long run, say over a period of a year's time, does the company gain or lose over that? On the rounding, it should break even. That's the intent of, that's the design of the policy, is that it break even. The company is not trying to gain or lose. The intent is that it should come out about even. Who designed the policy? Well, it's our policy. The Time Warner Cable's policy is an implementation of the policy that is approved by the DOL and the DLSC that they specifically reference policies that round to the nearest 15 minutes. And it's a textbook application of that. There is no designing of the policy other than that than to say, you know, to the nearest 15 minutes. Is there some agency that comes around and checks up on how the policy works in practice? Not as a of course the, you know, DOL is, a company like Time Warner Cable is always subject to inspections from the DOL and entities like that. And, you know, with respect to the practice and the application of it, Your Honor, I would also note that on page 16 of the reply brief, they admit that it was neutral as applied to at least two plaintiffs. But our point is the application of the policy, it's applied the same way to everyone. There, this isn't a, you know, it's done by the computer. It's applied the same way to everyone. So if it's neutral as applied to two, it's neutral as applied to all, even if they lost time. That's the last point I wanted to make. The Court has no further questions. Thank you, Your Honor. Are Your Honors indulging me with about 60 more seconds? Sure. All right. A couple of points. I'd like to first mention, if you accept that construction, you read away the two different elements of the facially neutral and. Is the Cease Candy case, we're operating here under California law, is that right? Yes. Is the Cease Candy case the main rounding case under California law? Yes. That is probably the most current case. There was very little jurisprudence on rounding in California before Cease Candy. All right. So my understanding, Cease Candy seems to me to say that, I mean, clearly it seems to me to say something different from what your opponent was saying, but I'm not sure it says what you're saying. It seems, it says it has to be on average over time what it results in. So, but it doesn't necessarily, it doesn't seem to me that they're saying on an individualized basis. Well, I agree that it says on average over time, and I don't believe that they. How do you, if it's not on an individualized basis, what kind of proof is used in these cases? Well, we demonstrated that. It's actually in the record. We took 400 individuals, randomly drawn. That sample of individuals was accurate to about plus or minus 5%. The rounding policy benefited Time Warner to an extrapolated amount to the full size of the class of about 2,700 people, I believe, in an amount of roughly $270,000, plus or minus $18,000 was the margin of error on that extrapolation. It benefited Time Warner over time. They, rounding benefited the employer more often in aggregate than it benefited employees. That's in the record. That was established. And that was a mechanical calculation done with Excel spreadsheets. It was done, a formula was written for the 400 people. That same formula could be applied to the whole 2,700. So it's a statistical analysis that you think has to be done. Right. And it would be a matter of minutes to do that calculation for the entire class. You could demonstrate, you could confirm that it really was approximately $270,000. Over what period? It was over, going back to up to four years prior to filing. Because the 400 people were randomly drawn, some were shorter than four years, some were the full period. It depended upon their term of work, but no further back than four years prior to filing. And finally, I would point out the as applied that I think Time Warner is carefully avoiding discussing is other policies they have affect the as applied aspect of their facially neutral rounding policy. We're conceding facial neutrality. The record has evidence that one plaintiff was written up multiple times for being two minutes late clocking in. This is in your brief, right? It's in the brief. Okay. Thank you. Thank you.
judges: Pregerson, Berzon, Christen